[Cite as *State v. McKenzie*, 2026-Ohio-2869.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

v.

KEITH W. MCKENZIE,

    DEFENDANT-APPELLANT.

CASE NO. 1-25-67

OPINION AND
JUDGMENT ENTRY

Appeal from Allen County Common Pleas Court
Trial Court No. CR2025 0136

Judgment Affirmed

Date of Decision:  July 27, 2026

APPEARANCES:

    *Jade Musa* for Appellant

    *John R. Willamowski, Jr.* for Appellee

**ZIMMERMAN, P.J.**

{¶1} Defendant-appellant, Keith W. McKenzie ("McKenzie"), appeals the October 22, 2025 judgment entry of sentence of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case stems from a traffic stop on February 22, 2025, when law enforcement stopped a vehicle operated by Timothy Looper ("Looper") due to an illegally tinted license plate. During the course of the traffic stop, officers learned that McKenzie, who was riding in the passenger seat of the vehicle, had outstanding warrants and asked him to exit the vehicle. While McKenzie was being placed under arrest for the unrelated warrants, an officer observed the top portion of a firearm protruding from underneath the passenger seat where McKenzie had just been sitting. The firearm was recovered from the vehicle and later identified as a .22-caliber Marlin rifle.

{¶3} On May 15, 2025, the Allen County Grand Jury indicted McKenzie on Count One of having weapons while under disability in violation of R.C. 2923.13(A)(2), (B), a third-degree felony, and Count Two of having weapons while under disability in violation of R.C. 2923.13(A)(3), (B), a third-degree felony. Count One was predicated on a prior conviction for burglary under R.C. 2911.12(A)(3), a felony offense of violence, while Count Two was predicated on a prior conviction for aggravated possession of drugs under R.C. 2925.11(A),

(C)(1)(a), a felony drug offense. The indictment included a forfeiture specification as to both counts. On June 16, 2025, McKenzie filed a written plea of not guilty to the indictment.

{¶4} On October 21-22, 2025, the case proceeded to a jury trial. On October 22, 2025, the jury found McKenzie guilty of both counts along with the corresponding forfeiture specifications.

{¶5} On October 30, 2025, the trial court sentenced McKenzie to 24 months in prison on Count One and ordered the prison term in this case to be served consecutively to the prison term imposed in another case. The trial court ordered the firearm forfeited and merged Counts One and Two for purposes of sentencing.

{¶6} On November 6, 2025, McKenzie filed his notice of appeal. He raises five assignments of error for our review. For ease of our discussion, we will begin by addressing McKenzie's first assignment of error, followed by his fourth and fifth assignments of error together, then his second and third assignments of error together.

### First Assignment of Error

**The trial court committed plain error by failing to dismiss Mr. McKenzie's indictment under R.C. 2923.13(A) as unconstitutional under the Second and Fourteenth Amendments of the United States Constitution. *Indictment* (May 15, 2025); *Judgment Entry of Conviction* (Oct. 22, 2025).**

{¶7} In his first assignment of error, McKenzie argues that the trial court committed plain error by failing to sua sponte dismiss the indictment in this case,

-3-

asserting that Ohio's having-weapons-while-under-disability statute, R.C. 2923.13(A), is unconstitutional under the Second Amendment both on its face and as applied to him. Specifically, he contends that the statute is facially invalid because it permanently disarms individuals without an individualized judicial finding that they present a credible threat to the physical safety of another. As applied to him, McKenzie makes two distinct arguments: first, that R.C. 2923.13(A)(2) cannot constitutionally reach his prior burglary conviction because the offense did not require a finding of harm or the risk of harm to another person; and second, that R.C. 2923.13(A)(3) cannot constitutionally reach his prior aggravated drug possession conviction because there was no evidence he was under the influence of any substance at the time of his arrest.

*Standard of Review*

{¶8} "Generally, we review a trial court's decision on a motion to dismiss an indictment for [an] abuse of discretion." *State v. Hudson*, 2022-Ohio-1435, ¶ 19. An abuse of discretion suggests that a decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

{¶9} However, "appellate courts conduct a de novo review of a trial court's decision concerning a defendant's motion to dismiss all or part of an indictment based upon a constitutional challenge to the statute under which the defendant stands indicted." *State v. Wheatley*, 2018-Ohio-464, ¶ 5 (4th Dist.). "De novo

review is independent, without deference to the lower court's decision." *State v. Hudson*, 2013-Ohio-647, ¶ 27 (3d Dist.).

**{¶10}** Nevertheless, because McKenzie did not object or move to dismiss the indictment, he has waived all but plain error on appeal. *State v. Hood*, 2025-Ohio-422, ¶ 19 (3d Dist.). Under "'Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."'" *State v. Harrison*, 2015-Ohio-1419, ¶ 69 (3d Dist.), quoting *State v. Walburg*, 2011-Ohio-4762, ¶ 47 (10th Dist.), quoting Crim.R. 52(B). "We recognize plain error with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *Id.* "'For plain error to apply, the trial court must have deviated from a legal rule, the error must have been an obvious defect in the proceeding, and the error must have affected a substantial right.'" *Id.*, quoting *State v. Vielma*, 2012-Ohio-875, ¶ 34 (3d Dist.). "'Under the plain error standard, the appellant must demonstrate that the outcome of his trial would clearly have been different but for the trial court's errors.'" *Id.*, quoting *Vielma* at ¶ 34.

*Analysis*

**{¶11}** In this case, McKenzie challenges the constitutionality of Ohio's having-weapons-while-under-disability statute under the Second Amendment of the United States Constitution, raising both facial and as-applied arguments following the United States Supreme Court's decisions in *New York State Rifle & Pistol Assn.,*

*Inc. v. Bruen*, 597 U.S. 1 (2021), and *United States v. Rahimi*, 602 U.S. 680 (2024). Ohio's having-weapons-while-under-disability statute, codified under R.C. 2923.13(A), provides, in its relevant part, that "[u]nless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance" if they have been convicted of a felony offense of violence (R.C. 2923.13(A)(2)) or a felony drug offense (R.C. 2923.13(A)(3)).

{¶12} Specifically, McKenzie argues that the statute is facially invalid because it allows for permanent, class-wide disarmament without requiring an individualized judicial determination that a person presents a credible threat to the physical safety of another. As applied to his specific predicate offenses, he argues that his prior burglary conviction does not fall within a historical tradition of dangerousness because the offense did not involve harm or the risk of harm to another person. Regarding his prior aggravated drug possession conviction, he argues that disarmament is unconstitutional as applied because there was no evidence he was under the influence of any substance at the time of his arrest.

{¶13} "'An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.'" *State v. Brown*, 2010-Ohio-4546, ¶ 9 (3d Dist.), quoting *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142 (1955), paragraph one of

the syllabus. "'That presumption of validity of such legislative enactment cannot be overcome unless it appear[s] that there is a clear conflict between the legislation in question and some particular provision or provisions of the Constitution.'" *Id.*, quoting *Xenia v. Schmidt*, 101 Ohio St. 437 (1920), paragraph two of the syllabus.

{¶14} "A statute may be challenged on constitutional grounds in two ways: (1) that the statute is unconstitutional on its face, or (2) that it is unconstitutional as applied to the facts of the case." *Id.* at ¶ 10. "To mount a successful facial challenge, the party challenging the statute must demonstrate that there is *no* set of facts or circumstances under which the statute can be upheld." (Emphasis added.) *Id.* "Where it is claimed that a statute is unconstitutional as applied, the challenger must present clear and convincing evidence of a presently existing set of facts that make the statute unconstitutional and void when applied to those facts." *Id.*

{¶15} "The Second Amendment to the United States Constitution provides: 'A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.'" *State v. Johnson*, 2024-Ohio-1163, ¶ 16 (8th Dist.), quoting the Second Amendment to the U.S. Constitution. "Article I, Section 4 of the Ohio Constitution sets forth a similar guarantee: 'The people have the right to bear arms for their defense and security; but standing armies, in time of peace, are dangerous to liberty, and shall not be kept up; and the military shall be in strict subordination to the civil power.'" *State v. Windland*, 2024-Ohio-1760, ¶ 28 (5th Dist.), quoting Ohio Const., art. I, § IV.

{¶16} Courts review Second Amendment claims under the two-step *Bruen/Rahimi* framework. *State v. Ball*, 2026-Ohio-2051, ¶ 7 (10th Dist.). First, the court must determine whether the plain text of the Second Amendment covers the regulated conduct. If it does, the burden shifts to the State to demonstrate that the regulation is "consistent with the principles that underpin the nation's historical tradition of firearm regulation." *Id.* To satisfy this burden, the State need not identify a "historical twin," but rather a "historical analogue." *Rahimi*, 602 U.S. at 701. Under this framework, prohibiting firearm possession by convicted felons or those deemed a danger to others remains a "presumptively lawful" historical analogue that does not violate the Second Amendment. *Id.* at 699.

{¶17} Assuming without deciding that McKenzie's conduct is covered by the Second Amendment, we conclude that R.C. 2923.13(A) is not facially invalid under the Second Amendment. *See State v. Thompson*, 2026-Ohio-1725, ¶ 59 (10th Dist.) (assuming without deciding that the plain text of the Second Amendment presumptively protects the conduct of an individual charged under R.C. 2923.13). Fundamentally, R.C. 2923.13(A) aligns with the historical tradition of disarming individuals deemed dangerous. *See State v. Windland*, 2024-Ohio-1760, ¶ 21 (5th Dist.); *State v. King*, 2024-Ohio-4585, ¶ 33 (8th Dist.). *But see State v. Philpotts*, 2025-Ohio-1179 (8th Dist.) (finding the portion of R.C. 2923.13(A)(2) that disarms individuals under indictment for a felony offense of violence to be facially unconstitutional), *appeal accepted*, 2025-Ohio-2749. Indeed, R.C. 2923.13(A) has

numerous constitutional applications, including disarming individuals convicted of violent felonies or drug trafficking offenses, categories historically associated with dangerousness. *See Windland* at ¶ 21. Because history demonstrates a clear link between these offenses and dangerousness, disarming these categories of offenders does not facially violate the Second Amendment. *See King* at ¶ 27 (determining that R.C. 2923.13(A)(2) is not facially unconstitutional because the statute comports with "this Nation's historical tradition of firearm regulation").

{¶18} Moreover, the statute provides a pathway for relief under R.C. 2923.14, ensuring it is not overly broad or universally prohibitive. *See id.* at ¶ 32; *Windland* at ¶ 21, fn. 1. *But see State v. Thacker*, 2024-Ohio-5835, ¶ 105 (1st Dist.) (holding R.C. 2923.13(A)(3) unconstitutional as applied to a nonviolent juvenile offender in part because the resulting lifetime disarmament is "subject only to a trial court's discretionary determination whether to lift his disability"), appeal accepted, 2025-Ohio-705.

{¶19} Consequently, since the statute possesses lawful applications, McKenzie cannot meet the heavy burden of establishing that no set of circumstances exists under which the law is valid. *See United States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024) (concluding that the federal weapons under disability analogue "is not susceptible to a facial challenge" because "our nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous"). Therefore, McKenzie's facial challenge must fail. *See Washington State Grange v.*

*Washington State Republican Party*, 552 U.S. 442, 449 (2008) (explaining that a plaintiff must establish "that no set of circumstances exists under which the Act would be valid," and that a facial challenge must fail if the statute retains a "plainly legitimate sweep").

{¶20} Furthermore, even if we construe McKenzie's argument as a narrower facial challenge directed specifically at R.C. 2923.13(A)(2) or (A)(3), the result remains the same. That is, because both subsections encompass undeniably constitutional applications, neither provision is unconstitutional in *all* of its applications.

{¶21} McKenzie's as-applied challenges fare no better. The prohibitions on firearm possession under R.C. 2923.13(A)(2) and (3), as applied to McKenzie in this case, are consistent with the principles that underpin the nation's historic tradition of firearm regulation. *See Thompson*, 2026-Ohio-1725, at ¶ 62 (10th Dist.) (acknowledging that "numerous courts have concluded that disarmament of dangerous individuals is consistent with the nation's history and tradition of firearm regulation"); *State v. Skaggs*, 2024-Ohio-4781, ¶ 31 (5th Dist.) (determining that "R.C. 2923.13(A)(3) is consistent with the Nation's historical tradition of firearms regulation, as applied to appellant"). *But see Thacker*, 2024-Ohio-5835, at ¶ 105 (1st Dist.) (finding R.C. 2923.13(A)(3) unconstitutional as applied to a defendant whose disability was based on a juvenile adjudication for a drug offense), *appeal accepted*, 2025-Ohio-705.

**{¶22}** In this case, McKenzie was charged with violating both R.C. 2923.13(A)(2) and (3) predicated on his prior convictions for burglary under R.C. 2911.12(A)(3), a third-degree felony, and aggravated possession of drugs under R.C. 2925.11(A), (C)(1)(a), a fifth-degree felony. *See Thompson* at ¶ 61 (explaining that an indictment charging multiple disability predicates survives a constitutional challenge so long as at least one provision is validly applied).

**{¶23}** R.C. 2923.13(A)(2) prohibits firearm possession by a person who "is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence." McKenzie's prior felony conviction for burglary under R.C. 2911.12(A)(3) places him squarely within this category of individuals that the legislature has determined pose a risk to public safety. Critically, the General Assembly has explicitly classified burglary under R.C. 2911.12(A)(3) as an offense of violence. *See* R.C. 2901.01(A)(9) (defining an "offense of violence" to include burglary under R.C. 2911.12(A)(3)).

**{¶24}** Moreover, notwithstanding McKenzie's assertion that his specific burglary conviction did not involve the actual presence of another person, the unlawful invasion of property carries a persistent risk of confrontation because it "can still pose a risk of harm when a person is present or likely to be present." *State v. Butler*, 2012-Ohio-4152, ¶ 8 (8th Dist.). *See also United States v. Coleman*, 655 F.3d 480, 481 (6th Cir. 2011) (holding that R.C. 2911.12(A)(3) is categorically a

-11-

violent felony because the offense "creates a risk of physical injury that is similar to the risk posed by generic burglary"); *Williams*, 113 F.4th at 659 (recognizing that burglary justifies a finding of danger because the offense "creates the possibility of a violent confrontation between the offender and occupant"). Disarming an individual who has committed such an offense aligns with the historical tradition of disarming those who pose a threat to public safety. *See Thompson* at ¶ 64, citing *King*, 2024-Ohio-4585, at ¶ 32 (8th Dist.). Therefore, we conclude that R.C. 2923.13(A)(2) as applied to McKenzie "is consistent with the nation's history and tradition of firearm regulation and does not violate the Second Amendment." *Ball*, 2026-Ohio-2051, at ¶ 10 (10th Dist.). *See also Williams* at 663 (concluding that an individual who has committed a crime that "inherently poses a significant threat of danger," such as burglary, is considered dangerous and may be constitutionally disarmed).

{¶25} Likewise, R.C. 2923.13(A)(3), in its relevant part, prohibits firearm possession by a person who "is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse . . . ." Regarding his prior conviction for aggravated possession of drugs, courts have consistently found that drug offenses indicate an individual is more likely to commit a future felony, marking them as the sort of threat to public safety that a legislature can constitutionally disarm. *Skaggs*, 2024-Ohio-4781, at ¶ 22 (5th Dist.). Specifically, "[t]he history

and tradition relevant to the Second Amendment support the legislature's power to restrict the Second Amendment right of drug users, alcoholics, or the mentally ill to carry firearms, and/or the history and tradition relevant to the Second Amendment support the legislature's power to disarm those the legislature deems dangerous." *Id.* at ¶ 31.

{¶26} Because this well-documented connection reliably marks an offender as a distinct threat, McKenzie's prior felony drug conviction establishes a presumption of dangerousness that constitutionally justifies his disarmament, regardless of whether he was actively under the influence at the time of his arrest. *See State v. Hodges*, 2025-Ohio-5448, ¶ 18 (6th Dist.) (agreeing that "R.C. 2923.13(A)(3) is consistent with our Nation's historical tradition of firearms regulation and, thus, is constitutional on its face [and] as applied to non-violent drug traffickers generally"); *Williams* at 659 (recognizing that drug trafficking inherently poses a significant threat of danger to the community, justifying a finding of dangerousness for purposes of disarmament).

{¶27} Once the presumption of dangerousness attaches, the defendant bears the burden to "present clear and convincing evidence that he is no longer dangerous" to succeed on an individualized as-applied challenge. *Hodges* at ¶ 21. However, because McKenzie failed to raise this constitutional challenge in the trial court, he forfeited the opportunity to develop the necessary factual record. *See State v. Roehrenbeck*, 2026-Ohio-797, ¶ 35 (5th Dist.) (holding that "an as-applied

constitutional challenge must be raised during the trial court proceedings to develop a record demonstrating the particular facts supporting the constitutional challenge"). Indeed, the record before this court is completely devoid of any evidence regarding McKenzie's current level of dangerousness or rehabilitation. As the Supreme Court of Ohio has made clear, a defendant cannot demonstrate plain error on an as-applied constitutional challenge using a silent record. *See State v. Quarterman*, 2014-Ohio-4034, ¶ 16, 19 (declining to find plain error on an as-applied constitutional challenge raised for the first time on appeal because the record was not sufficiently developed to evaluate the claim). Consequently, McKenzie failed to establish that the statute is unconstitutional as applied to him.

{¶28} Accordingly, because R.C. 2923.13(A) is constitutional both facially and as applied to McKenzie, the trial court did not err, let alone commit plain error, by failing to sua sponte dismiss the indictment.

{¶29} McKenzie's first assignment of error is overruled.

**Fourth Assignment of Error**

**Mr. McKenzie's conviction for having a weapon under disability was against the manifest weight of the evidence because the State did not prove that Mr. McKenzie knew that the gun was a deadly weapon. This error denied him his right to due process under the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution. Ex. 6; Trial Tr. 166, 178, 190.**

## Fifth Assignment of Error

**Mr. McKenzie's conviction for having a weapon under disability lacks sufficient evidence because the State did not prove that Mr. McKenzie knew that the gun was a deadly weapon. This error denied him his right to due process under the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution. Judgment. Trial Tr. 217.**

{¶30} In his fourth and fifth assignments of error, McKenzie argues that his having weapons while under disability conviction is based on insufficient evidence and is against the manifest weight of the evidence.

### *Standard of Review*

{¶31} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). Therefore, we address each legal concept individually.

{¶32} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the

evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.). *See also State v. Berry*, 2013-Ohio-2380, ¶ 19 (3d Dist.) ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *Thompkins* at 386.

{¶33} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[] the evidence and all reasonable inferences, consider[] the credibility of witnesses and determine[] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

*Analysis*

**{¶34}** As an initial matter, the record reveals that McKenzie failed to renew his Crim.R. 29(A) motion at the conclusion of his case-in-chief or at the conclusion of all the evidence. "In order to preserve the issue of sufficiency on appeal, this court has held that '[w]hen a defendant moves for acquittal at the close of the state's evidence and that motion is denied, the defendant waives any error which might have occurred in overruling the motion by proceeding to introduce evidence in his or her defense.'" *State v. Hurley*, 2014-Ohio-2716, ¶ 37 (3d Dist.), quoting *State v. Edwards*, 2004-Ohio-4015, ¶ 6 (3d Dist.). "'In order to preserve a sufficiency of the evidence challenge on appeal once a defendant elects to present evidence on his behalf, the defendant must renew his Crim.R. 29 motion at the close of all the evidence.'" Id., quoting *Edwards* at ¶ 6. Based on this court's precedent, McKenzie's failure to renew his Crim.R. 29(A) motion at the conclusion of his case-in-chief or at the conclusion of all evidence waived all but plain error on appeal. *Id.*

**{¶35}** "However, '[w]hether a sufficiency of the evidence argument is reviewed under a prejudicial error standard or under a plain error standard is academic.'" *Id.* at ¶ 38. "Regardless of the standard used, 'a conviction based on legally insufficient evidence constitutes a denial of due process, and constitutes a manifest injustice.'" *Id.*, quoting *Thompkins,* 78 Ohio St.3d at 386-387. Accordingly, we will proceed to determine whether the State presented sufficient evidence to support McKenzie's conviction. *See id.*

**{¶36}** McKenzie was convicted of having a weapon while under disability in violation of R.C. 2923.13(A)(2), which provides, "[u]nless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if . . . [t]he person . . . has been convicted of any felony offense of violence . . . ." Thus, to secure a conviction, the State was required to prove that McKenzie knowingly acquired, had, carried, or used a firearm while under a legal disability.

**{¶37}** "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "Whether a defendant acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including doing the act itself." *State v. Gross*, 2019-Ohio-5304, ¶ 14 (5th Dist.).

**{¶38}** "'Firearm' means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant [and] includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." R.C. 2923.11(B)(1). *See State v. Junod*, 2019-Ohio-743, ¶ 25 (3d Dist.) (noting that a BB gun is not a firearm). The statute does not require the State to prove that the defendant knew of their disability or received notice of it. *State v. Gatewood*, 2021-Ohio-3325, ¶ 22 (1st Dist.).

{¶39} Possession may be actual or constructive. *State v. Bustamante*, 2013-Ohio-4975, ¶ 25 (3d Dist.). Constructive possession requires evidence that the defendant knowingly exercised dominion and control over the firearm, even if it was not in their immediate physical possession. *Id.* Circumstantial evidence alone can suffice to establish constructive possession. *Id.*

{¶40} On appeal, McKenzie argues that his conviction is not supported by sufficient evidence because the State failed to prove the essential element that he *knowingly* possessed a firearm. Specifically, he contends the State failed to produce any evidence demonstrating that he knew that the weapon was a firearm rather than a BB gun.

{¶41} Viewing the evidence in a light most favorable to the prosecution, we conclude that McKenzie's conviction for having weapons while under disability is based on sufficient evidence. To establish that a defendant knowingly possessed a prohibited weapon, the State must prove only that the defendant knew, or was aware of the probability, that the item in his possession was dangerous. *State v. Jordan*, 89 Ohio St.3d 488, 494-495 (2000). Crucially, the State is not required to prove that the defendant knew the specific characteristics that classified the item as a firearm. *See id.* at 494. Thus, even if a defendant claims he did not know for certain what the item was, the State may still prove his culpability through objective demonstrations of his mental state and permissible inferences drawn from the

surrounding facts. *State v. Patterson*, 2026-Ohio-1768, ¶ 25 (8th Dist.), citing *Jordan* at 495.

**{¶42}** In this case, the State presented sufficient circumstantial evidence demonstrating that McKenzie knowingly exercised dominion and control over the firearm and was aware of its nature. Indeed, Looper testified on behalf of the State that he picked McKenzie up at his residence on the morning of the incident and observed him approach the vehicle carrying the rifle "wrapped up in a jacket, or a sweatshirt, or something." (Tr. at 183). Upon entering the vehicle, McKenzie requested that Looper take him to a specific location to "see if he could sell what he had." (*Id.*). When the prospective buyer declined to purchase the firearm, McKenzie returned to the vehicle and placed the weapon in the front seat. (*Id.* at 186). Looper further testified that, when they were subsequently stopped by law enforcement, McKenzie attempted to conceal the firearm by "covering it up and putting it down underneath the" seat. (*Id.* at 187).

**{¶43}** Further, Patrolman Logan Patton ("Patrolman Patton") of the Lima Police Department testified that he conducted the traffic stop of the vehicle and learned that both Looper and McKenzie had active warrants for their arrest. After McKenzie was placed under arrest and exited the vehicle, Looper consented to a search of the vehicle. Patrolman Patton testified that he observed "the top part of a firearm sticking out from under the seat" where McKenzie had been sitting. (Tr. at

164). He further testified that it was immediately apparent to him that the item was a firearm, though McKenzie claimed at the scene that he was told it was a BB gun.

**{¶44}** Detective Jesse Harrod ("Detective Harrod") of the Lima Police Department later interviewed McKenzie regarding the incident, during which McKenzie admitted that he knew that the firearm was in the vehicle but claimed that he thought it was a BB gun. At the close of the State's evidence, the parties stipulated that the rifle was a firearm within the meaning of the statute.

**{¶45}** While McKenzie claimed that he believed the weapon was merely a BB gun, the jury could reasonably infer from his objective actions and statements that he knew it was a firearm. *See Patterson*, 2026-Ohio-1768, at ¶ 29 (8th Dist.); *State v. Stadmire*, 2003-Ohio-873, ¶ 46-48 (8th Dist.) (rejecting the defendant's claim that he only possessed a BB gun, and noting that the State can prove an item is a firearm through circumstantial evidence, such as testimony that the weapon was wrapped in a shirt). That is, the jury could infer McKenzie's culpable mental state from his attempts to obscure the weapon in a jacket or sweatshirt, his efforts to sell it, and his attempt to conceal it under his seat when approached by police. *See State v. Palmer*, 2023-Ohio-4110, ¶ 15 (9th Dist.) (determining that a jury could reasonably infer a defendant possessed a firearm based on circumstantial evidence of his nervous behavior and physical attempts to conceal the weapon from police).

**{¶46}** Consequently, viewing the evidence in a light most favorable to the State, any rational trier of fact could have found that the State proved that McKenzie

knowingly possessed the firearm. McKenzie's conviction is therefore supported by sufficient evidence.

{¶47} Having concluded that McKenzie's having weapons while under disability conviction is based on sufficient evidence, we next address McKenzie's argument that his having weapons while under disability conviction is against the manifest weight of the evidence. In support of his manifest-weight-of-the-evidence argument, McKenzie asserts that the jury clearly lost its way by relying on the testimony of Looper. McKenzie argues that Looper's testimony was inconsistent and self-serving, noting that Looper had a clear motive to deflect ownership of the firearm away from himself. Furthermore, McKenzie contends that the State's evidence failed to overcome his own consistent assertions that he believed the weapon was merely a BB gun—a belief that was initially shared by Looper himself. Consequently, he argues that the verdict resulted in a manifest miscarriage of justice.

{¶48} "Although we review credibility when considering the manifest weight of the evidence, the credibility of witnesses is primarily a determination for the trier of fact." *State v. Banks*, 2011-Ohio-5671, ¶ 13 (8th Dist.), citing *DeHass*, 10 Ohio St.2d 230, at paragraph one of the syllabus. "The trier of fact is best able 'to view the witnesses and observe their demeanor, gestures[,] and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Id.*, quoting *State v. Wilson*, 2007-Ohio-2202, ¶ 24.

{¶49} While McKenzie argues that Looper had a motive to lie and that his testimony was self-serving, the jury was fully aware of Looper's position as the driver of the vehicle and his own legal disabilities. *See, e.g.*, *State v. Suffel*, 2015-Ohio-222, ¶ 33 (3d Dist.) (noting that we must be "mindful of the jury's 'superior first-hand perspective in judging the demeanor and credibility of witnesses'"), quoting *State v. Phillips*, 2014-Ohio-5162, ¶ 125 (10th Dist.), citing *DeHass* at paragraph one of the syllabus. Indeed, the defense had the opportunity to cross-examine Looper and highlight these potential motives to the jury. *See State v. Schoewe*, 2023-Ohio-1598, ¶ 33 (6th Dist.) (rejecting a manifest weight challenge based on witness bias because the witness "was subjected to a thorough cross-examination, and the jury was able to judge for itself what weight, if any, to extend to her testimony").

{¶50} Furthermore, the jury was not required to accept McKenzie's denials at face value. *See, e.g.*, *State v. Voll*, 2012-Ohio-3900, ¶ 27 (3d Dist.) (acknowledging that "it is well within the province of the trier-of-fact to determine [a witness's] credibility in making those statements including the prerogative to find [a witness's] denials not to be truthful"). Specifically during the trial, the State played the video recording of Detective Harrod's interview with McKenzie. This allowed the jury to independently observe McKenzie's demeanor, evaluate his tone, and assess the veracity of his claim that he believed the firearm was a BB gun. Crucially, the jury was able to take into consideration the entirety of that interaction,

including the fact that, by the end of the interview, Detective Harrod explicitly pointed out to McKenzie that his story had changed throughout their conversation and told McKenzie that he did not believe him. Given these inconsistencies, the jury was well within its province to reject McKenzie's explanation and credit the State's evidence.

{¶51} Accordingly, having reviewed the entire record, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that McKenzie's conviction must be reversed and a new trial ordered. Therefore, McKenzie's conviction for having weapons while under disability is not against the manifest weight of the evidence.

{¶52} Accordingly, McKenzie's fourth and fifth assignments of error are overruled.

**Second Assignment of Error**

**Mr. McKenzie's trial counsel rendered ineffective assistance of counsel under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution, and Article I, Sections 9 and 10 of the Ohio Constitution, by failing to challenge or preserve the issue of constitutional validity of Mr. McKenzie's indictment under the Second Amendment.** *Indictment* **(May 15, 2025);** *Judgment Entry of Conviction* **(Oct. 22, 2025).**

**Third Assignment of Error**

**Mr. McKenzie's trial counsel rendered ineffective assistance of counsel under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution, and Article I, Sections 9 and 10 of the Ohio Constitution by failing to object and/or to move to strike**

**Detective Harrod's testimony opining that Mr. McKenzie possessed the gun. Trial Tr. 204, 210.**

{¶53} In his second and third assignments of error, McKenzie argues that his trial counsel was ineffective. Specifically, McKenzie argues that his trial counsel was ineffective for failing to challenge the constitutionality of Ohio's having weapons while under disability statute under the Second Amendment and for failing to object to Detective Harrod's opinion testimony that McKenzie possessed the firearm.

*Standard of Review*

{¶54} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the

errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976), *vacated in part on other grounds*, 438 U.S. 910 (1978).

{¶55} "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Liles*, 2014-Ohio-259, ¶ 48 (3d Dist.), quoting *Bradley* at 142, citing *Strickland* at 691. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Bradley* at 142 and citing *Strickland* at 694.

*Analysis*

{¶56} Based on our resolution of McKenzie's first assignment of error rejecting his constitutional challenge, his trial counsel was not ineffective for failing to challenge the constitutionality of Ohio's having weapons while under disability statute under the Second Amendment.

{¶57} Turning to McKenzie's contention that his trial counsel was ineffective for failing to object to Detective Harrod's testimony, McKenzie argues that trial counsel should have objected to Detective Harrod's statements opining that McKenzie possessed the firearm. Stated another way, McKenzie contends that Detective Harrod's testimony impermissibly infringed on the jury's fact-finding function by offering an opinion on the ultimate issue of guilt.

-26-

{¶58} "The 'failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.'" *Liles*, 2014-Ohio-259, at ¶ 49 (3d Dist.), quoting *State v. Johnson*, 2006-Ohio-6404, ¶ 139, citing *State v. Holloway*, 38 Ohio St.3d 239, 244 (1988). "Because 'objections tend to disrupt the flow of a trial, and are considered technical and bothersome by the fact-finder,' competent counsel may reasonably hesitate to object in the jury's presence." *State v. Campbell*, 69 Ohio St.3d 38, 53 (1994), quoting Jacobs, *Ohio Evidence*, at iii-iv (1989). "To prevail on such a claim, a defendant must first show that there was a substantial violation of any of defense counsel's essential duties to his client and, second, that he was materially prejudiced by counsel's ineffectiveness." *Holloway* at 244.

{¶59} "In general, opinion testimony of a police officer about the guilt of the defendant is inadmissible." *State v. Ruble*, 2017-Ohio-7259, ¶ 58 (4th Dist.). "That is, '[a] police officer's opinion that an accused is being untruthful is inadmissible.'" *Id.*, quoting *State v. Davis*, 2008-Ohio-2, ¶ 122. However, "[a] police officer may give lay opinion based upon his perception of evidence at the scene." *State v. Phillips*, 2017-Ohio-1284, ¶ 44 (8th Dist.), citing *State v. Drummond*, 2006-Ohio-5084, ¶ 222 and Evid.R. 701.

{¶60} In this case, McKenzie's trial counsel was not ineffective for failing to object to Detective Harrod's testimony that McKenzie possessed the firearm. At trial, Detective Harrod was questioned about the lack of forensic testing on the firearm. Explaining his investigative decision not to submit the weapon for DNA

-27-

analysis, Detective Harrod testified that his decision was based on a combination of factors. First, he observed on the video that the weapon had been handled by several officers and was therefore not "preserved for DNA." (Tr. at 204). Second, because the weapon was in plain view, he did not question who it belonged to, testifying that "with the gun sticking so far out from underneath the seat[, he] didn't think there was [a] possibility that it wasn't Mr. McKenzie's, [or] that he wasn't aware that it was underneath the seat." (*Id.*). Detective Harrod further testified that, because "so much of the gun [was] obviously visible," he "didn't think it was necessary to send it" for testing. (*Id.*). During cross-examination, Detective Harrod reiterated this rationale, testifying that, "after [he] watched the body cam[, he] believe[d] that is possession when [the firearm] is obviously sticking out from underneath his seat." (*Id.* at 210).

{¶61} Critically, Detective Harrod's testimony was about the investigative steps that he took based on his perception of the evidence. *Compare Drummond* at ¶ 222 (concluding that "[t]rial counsel's failure to object was not deficient because the testimony was proper" since the law enforcement officer's "testimony was lay opinion based upon his perception of evidence at the . . . residence"). In other words, Detective Harrod was not instructing the jury to find McKenzie guilty; rather, he was explaining his rationale for concluding the forensic investigation. That is, his testimony reflected his professional judgment that, at that stage of the investigation,

the body camera footage had already established a sufficient link to justify charging McKenzie without the need for DNA testing.

{¶62} Even if the testimony constitutes improper opinion testimony, McKenzie cannot demonstrate the requisite prejudice to prevail on his claim. As we addressed in McKenzie's fourth and fifth assignments of error, the State presented ample independent, circumstantial evidence from which the jury could conclude that he knowingly possessed the firearm. *Compare id.* at ¶ 222. Thus, there is no reasonable probability that, but for the admission of Detective Harrod's testimony, the outcome of the trial would have been different. *See State v. Stoermer*, 2018-Ohio-4522, ¶ 45 (2d Dist.) ("Even assuming that [the detective's] testimony was improper, we are unable to say that there is a reasonable probability that the result of the trial would have been different but for this testimony.").

{¶63} For these reasons, McKenzie's trial counsel was not ineffective.

{¶64} McKenzie's second and third assignments of error are overruled.

{¶65} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**MILLER and WALDICK, J.J., concur.**

Case No. 1-25-67

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. *See* App.R. 30.

 

William R. Zimmerman, Judge

 

Mark C. Miller, Judge

 

Juergen A. Waldick, Judge

DATED:
/hls